**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James Lyne HARNAGE, Defendant–
Appellant.**

No. 86–3071.

United States Court of Appeals,
Eleventh Circuit.

Nov. 2, 1992.

Archibald J. Thomas, III, Jacksonville, Fla., for defendant-appellant.

Mark V. Jackowski, Tamra Phipps, Asst. U.S. Attys., Tampa, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, HATCHETT and BIRCH, Circuit Judges.

HATCHETT, Circuit Judge:

In this opinion, we reject the government's invitation to sanction its use of the doctrine of collateral estoppel to preclude a criminal defendant from raising an issue adjudicated in a prior proceeding.

## I. BACKGROUND

A grand jury in the Middle District of Florida indicted James Lyne Harnage, charging that he engaged in a conspiracy to possess with the intent to distribute approximately 40,000 pounds of marijuana. Prior to trial, Harnage moved to quash the indictment, or in the alternative to suppress the evidence. In his motion, Harnage argued that the indictment resulted from privileged communications made to his attorney, James Smith, of Denver, Colorado. Prior to Harnage's indictment, James Smith became an FBI informant and disclosed information concerning Harnage's drug activities.

The district court in Florida denied Harnage's alternative motions finding that Harnage filed an identical motion asserting an attorney-client relationship with Smith in the Northern District of Texas after a Texas grand jury indicted Harnage on vari-

ous drug charges. After a hearing, the Texas district court held that no attorney-client relationship existed between Harnage and Smith. Accordingly, the Florida district court ruled that the doctrine of collateral estoppel barred Harnage's alternative motions.

A Florida jury found Harnage guilty of the drug offenses charged in the indictment. At the same time Harnage's Florida case was on appeal to this court, the Fifth Circuit Court of Appeals considered Harnage's Texas appeal. The Fifth Circuit withheld final ruling on Harnage's appeal and remanded the case to the Texas district court for an additional evidentiary hearing concerning Harnage's alleged attorney-client relationship with Smith. *United States v. Fortna*, 796 F.2d 724, 731 (5th Cir.), *cert. denied*, 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986).

After a second hearing, the Texas district court issued supplemental findings in which it again determined that Harnage and Smith had no attorney-client relationship. The Fifth Circuit affirmed the Texas district court's determination without opinion. *United States v. Harnage*, 871 F.2d 119 (5th Cir.), *cert. denied*, 493 U.S. 839, 110 S.Ct. 123, 107 L.Ed.2d 84 (1989). This court then remanded Harnage's Florida appeal to the district court in order to resolve the estoppel issue based on the additional findings of the Texas district court.

On July 2, 1990, the Florida district court issued its findings of fact and conclusions of law concerning the collateral estoppel issue. In its order, the district court noted that whether the government may bar a defendant from relitigating a previously unsuccessful attempt to suppress evidence is an issue of first impression in this circuit. The district court then proceeded to apply the test developed in *United States v. Levasseur*, 699 F.Supp. 965 (D.Mass. 1988), to determine whether the government could collaterally estop Harnage from raising the previously litigated attorney-client relationship issue. Ultimately, the district court denied Harnage's motion to

quash the indictment, or in the alternative to suppress evidence, because the doctrine of collateral estoppel barred those claims.

## II. ISSUE

The sole issue in this case is whether this circuit will sanction the government's use of the doctrine of collateral estoppel to preclude a criminal defendant from raising an issue adjudicated in a prior proceeding.

## III. DISCUSSION

The doctrine of collateral estoppel is a commonly used tool in the civil arena developed to conserve judicial resources "as well as those of the parties to the actions and additionally as providing the finality needed to plan for the future." *Ashe v. Swenson*, 397 U.S. 436, 464, 90 S.Ct. 1189, 1204, 25 L.Ed.2d 469 (1970) (Burger, C.J., dissenting). The doctrine's use in the criminal arena, however, has traditionally been limited to only one party—the defendant.

In *Ashe*, the Supreme Court associated the doctrine of collateral estoppel with a defendant's fifth amendment guarantee against double jeopardy. Thus, the Court held that a defendant acquitted in a previous case could not be tried again where the facts at issue in the first case were thesame as the facts at issue in the subsequent prosecution. *Ashe*, 397 U.S. at 446–447, 90 S.Ct. at 1196. "[D]ouble jeopardy, prohibits prosecution of the crime itself, whereas collateral estoppel 'simply forbids the government from relitigating certain facts in order to establish the fact of the crime.'" *Ferenc v. Dugger*, 867 F.2d 1301, 1303 (11th Cir.), *cert. denied*, 493 U.S. 828, 110 S.Ct. 95, 107 L.Ed.2d 59 (1989) (citation omitted).

■ A defendant's use of collateral estoppel also extends to evidentiary facts. *United States v. Lee*, 622 F.2d 787, 789 (5th Cir.1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981).[1] Hence, this court delineated two situations in

---

1. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

which a criminal defendant may utilize collateral estoppel: "(1) [to] bar prosecution or argumentation of facts necessarily established in a prior proceeding; or (2) . . . [to] completely bar subsequent prosecution where one of the facts necessarily determined in the former trial is an essential element of the conviction the government seeks." *United States v. DeMarco,* 791 F.2d 833, 836 (11th Cir.1986).

■ In this case, however, it is the government seeking to preclude a defendant from relitigating a prior unsuccessful attempt to quash a subpoena in a different court. Because this issue had never been decided in this circuit, the district court adopted the approach set out in *United States v. Levasseur,* 699 F.Supp. 965 (D.Mass.1988).

In *Levasseur,* seven defendants were tried in both the Eastern District of New York and the District of Massachusetts. In the subsequent Massachusetts prosecution, the district court ruled that the government could collaterally estop the defendants from relitigating a motion to suppress evidence used in the previous proceeding in New York. The district court stated, "Although the matter may well be different with juries and jury issues, judges can be considered more or less fungible in this context so that a decision by one federal judge can and should bind another provided that the governing law is the same." *Levasseur,* 699 F.Supp. at 980–81 (footnote omitted).

The district court then proposed five criteria which, if met, would allow the government to use the doctrine of collateral estoppel.

First, there obviously must be an identity of issues in the two proceedings. Second, a defendant must have had sufficient incentive to have vigorously and thoroughly litigated the issue in previous proceedings. Thus, courts should hesitate to estop a defendant who lost a suppression hearing in a previous matter involving charges relatively minor com-

pared to the present charges. Third, the defendant estopped must have been a party to the previous litigation. Fourth, the applicable law must be identical in both proceedings. If the proceedings in question take place in districts in different circuits, the defendant cannot be estopped unless the governing law is the same. Fifth and finally, the first proceeding must result in a final judgment on the merits that provides the defendant not only the opportunity to appeal, but also sufficient incentive. Thus, an acquitted defendant, or one who for a variety of reasons may not have had sufficient incentive to appeal a conviction—for example, a defendant who receives a relatively favorable sentence—may not be estopped. An actual appeal to a reviewing court, of course, satisfies this criteria.

699 F.Supp. at 981 (citations and footnotes omitted).

We are not at this time prepared to adopt the *Levasseur* analysis for this circuit because we find that it would create more problems than it was designed to solve. We are not convinced that allowing the government to bar a defendant from relitigating an unfavorable determination of facts in a prior proceeding would serve the original goal of collateral estoppel—judicial economy.

In order to allow the government to utilize collateral estoppel in this situation, the district court would be required to apply the test factors set out in *Levasseur.* These factors would require a district court in this circuit to apply fuzzy and imprecise measurements such as "sufficient incentive," "relatively minor charges," and "relatively favorable sentence." *Levasseur,* 699 F.Supp. at 981. No circuit court has adopted the *Levasseur* analysis. "[C]ourts that have applied the collateral-estoppel concept to criminal actions would certainly not apply it to *both* parties, as is true in civil cases...." *Ashe,* 397 U.S. at 464–65, 90 S.Ct. at 1205 (Burger, C.J., dissenting) (emphasis in original).

More importantly, the district court would be compelled to determine whether counsel in the prior proceeding was effective. To determine this issue, the district court would need to procure the records from the prior proceeding and, usually hold an evidentiary hearing to properly perform the review process. The fact that this type of review process would be necessary to effectuate the government's use of collateral estoppel completely defeats the doctrine's goal—judicial efficiency and economy.[2]

## IV. CONCLUSION

Accordingly, we hold that the government may not collaterally estop a criminal defendant from relitigating an issue decided against the defendant in a different court in a prior proceeding.[3] Accordingly, we remand this case to the district court and direct it to reopen the hearing on Harnage's motion to quash the indictment and to make its own findings concerning the motion.[4]

REVERSED and REMANDED.

2. This court realizes that a defendant's due process rights would also be implicated should the government be allowed to use the doctrine of collateral estoppel. Because we reject the government's use of the doctrine on the grounds of judicial economy, a discussion of the due process implications is unnecessary.

3. Although we do not list the numerous circumstances in which the collateral estoppel issue may arise, we emphasize that nothing in this opinion is intended to change the present law of this circuit.

4. In this case, at oral argument the parties agreed that the record from the previous proceeding should be evaluated when the district court resolves the motions before it. Pursuant to the parties' agreement, the district court should issue its findings based upon the record from the Texas district court and any supplementary material Harnage submits. The supplementation may include the testimony of live witnesses that Harnage wishes to present in support of his motion.